**Efran VIZCARRA–DELGADILLO,**
**Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21571.**

United States Court of Appeals
Ninth Circuit.
April 26, 1968.

Donald L. Ungar (argued) of Phelan, Simmons & Ungar, San Francisco, Cal., for appellant.

James Simonelli (argued), Asst. U. S. Atty., John P. Hyland, U. S. Atty., Sacramento, Cal., Steve Suffin, Immigration & Naturalization Service, San Francisco, Cal., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and KOELSCH and BROWNING, Circuit Judges.

KOELSCH, Circuit Judge.

Efran Vizcarra-Delgadillo, convicted on his plea of guilty to a charge of aiding and abetting the alteration and possession of a false immigration document [18 U.S.C. §§ 1546 and 2], commenced this proceeding, pursuant to 28 U.S.C. § 2255, to set aside the judgment.[1] His contention was that he did not have the effective assistance of counsel: in particular, that his court-appointed attorney did not make an independent investigation of the

case sufficient to give appellant an "informed opinion" on the question of what plea to enter. Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 92 L.Ed 309 (1948). The district court, following an evidentiary hearing, denied him relief. We affirm.

Prior to appellant's entry of plea, appellant's attorney (hereinafter "counsel") consulted with appellant on at least two occasions; he also discussed the case with the district attorney in charge of the prosecution and the immigration officer; and he reviewed their files, to which he was permitted free access. He did not interview any prospective prosecution witnesses. He frankly acknowledged that his investigation consisted of what he learned from appellant plus the information secured from the prosecution.

But we cannot conclude on this record that counsel's failure to make a more extended investigation "made the proceedings a farce and a mockery of justice, shocking to the conscience of the court." Cofield v. United States, 263 F.2d 686, 689 (9th Cir. 1959).

Counsel was no novice in defending those accused of the commission of criminal offenses; in fact, he had previously represented a person charged with the same crime as appellant. And his discussion of the matter with appellant revealed facts that conclusively pointed to guilt. However, being deeply concerned that appellant, a young Mexican national, would surely be deported if convicted, counsel carefully explained appellant's rights, the government's burden and the punishment if guilt was established. Appellant, nevertheless, stated that he wanted "to get it over with."

Included in the prosecution's files were a confession signed by appellant and the written statement of Victorian Alzaga-Hernandez, the person for whom appellant had procured the forged immigration card.[2] It is clear that counsel in-

1. The document was a "Form I–151 Alien Border Crossing Card" issued by the Immigration Service.

2. Counsel learned that Alzaga-Hernandez was presently detained.

quired into the circumstance under which the confession was made and that the answers satisfied him that this confession would be admissible, for he testified: "I asked the defendant the questions, the normal questions in this regard, and I got back answers which indicated to me that it [i. e., the arrest] was legal. I also got the answers back which indicated to me that he had been questioned properly and he had fully and readily admitted all these things." Particularly significant is counsel's collateral testimony: "Well, it would be at this time that I would have been interviewing the defendant [i. e., August 9, 1966] that this [problem of admissibility] would be the foremost thing in my mind, because I had just finished a supplemental brief to the California Supreme Court applying the *Miranda* decision [Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (June 13, 1966)] to a case I had pending which was finished on the first of August." [3] Counsel further testified in substance that he inquired as to the interval between the arrest and arraignment before the Commissioner and that he believed it did not constitute unnecessary delay. See McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943) and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 136, 1 L.Ed.2d 1479 (1957). And we note that the court below found that the officers took appellant before a commissioner at "the earliest appointment they could get. * * *"

In sum, the record reveals counsel as an experienced and conscientious trial lawyer possessed of facts secured directly from a client that showed the latter's guilt; he also knew that the prosecution had a confession and the statement of another person (then in custody) which implicated his client; questioning of his client revealed no facts or circumstances suggestive of coercion, overreaching or other official misconduct that would render the confession inadmissible upon trial.

The extent and nature of the factual investigation necessary to an "informed opinion" essential to the rendition of "effective assistance of counsel" obviously will vary from case to case. Counsel must of course be inquisitive but he need not be omniscient. In this case counsel cannot be faulted for relying in large measure upon his client, particularly when the latter's inculpatory admissions freely aired to the prosecution, were corroborated by the statement of another and echoed the ring of truth. We cannot conclude that appellant did not receive effective legal counsel.

The judgment is affirmed.

BROWNING, Circuit Judge (dissenting) :

The judgment of conviction should be set aside on two grounds.

First, appellant did not receive the effective assistance of counsel guaranteed by the Sixth Amendment. Before appellant entered his plea, he was "entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered." Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948). Appellant's counsel did not discharge these responsibilities. He failed to inform himself on the facts and the law. He acted "in default of knowledge that reasonable inquiry would have produced, and hence in default of any judgment at all." Brubaker v. Dickson, 310 F.2d 30, 39 (9th Cir. 1962), and authorities cited. See also Wilson v. Rose, 366 F.2d 611, 614–615 (9th Cir. 1966).

3. The court below made findings, supported by substantial evidence, that appellant, at the time of his arrest and again immediately before making his confession and yet a third time when he was brought before the United States Commissioner, was fully advised of his rights as required by the Supreme Court's decision in *Miranda*.

Appellant's principal concern was that he might lose his status as an alien lawfully admitted for permanent residence, and be deported. Appellant's counsel thought the sentencing judge could spare appellant from deportation. He testified, "the main thing I was banking on was trying to get sympathy from the judge to allow [appellant] to remain in the United States, because this was obviously his wish." Accordingly, counsel's only appeal on appellant's behalf at sentencing was that the court "allow him to maintain his alien residence status in the United States."

The court had no power to do what counsel asked. 8 U.S.C. § 1251(b) (1964) authorizes the sentencing court to recommend that an alien not be deported. Subsection (b), however, applies only in cases arising under 8 U.S.C. § 1251(a) (4) (1964), which relates to the general category of "crimes involving moral turpitude." 8 U.S.C. § 1251 (a) (5) (1964) provides that "any alien * * * shall * * * be deported who * * * has been convicted under section 1546 of Title 18," the statute under which appellant was charged. Thus, because subsection (b) was not applicable to appellant's case, the court had no authority to recommend that he not be deported. This was clear from our decision in Jew Ten v. Immigration & Naturalization Service, 307 F.2d 832, 834–835 (9th Cir. 1962).

According to his own testimony, counsel's legal research consisted of stopping at the county law library on his way to court to reread 18 U.S.C. § 1546. Asked whether he had also checked the deportation provisions of the Immigration and Naturalization Act to determine whether a conviction under 18 U.S.C. § 1546 would subject the defendant to deportation, counsel responded, "(that's) like asking me did I check everything in the world."

Either appellant's counsel was unaware of subsection (a) (5), mandating appellant's deportation on conviction, or he did not grasp its plain meaning. Ob-

viously he was unaware of our decision in *Jew Ten*. His entire effort on appellant's behalf was directed at achieving a legally impossible result. The course he adopted was inherently and inevitably self-defeating. It made appellant's deportation certain. Appellant's only possibility of avoiding deportation lay in standing trial.

Appellant's attorney testified that "as far as I could see [appellant] had no defense." He based this conclusion entirely upon conversations with appellant (an 18-year-old Mexican with a fifth grade education, who did not speak English and had no prior experience with the criminal law), and with the Immigration agent and the Assistant United States Attorney. He testified, "I did not check any outside record. I depended on what the Defendant told me and what the other two officers told me." The conversations with the two government officers seem to have taken place in the courtroom during a recess. Appellant's counsel testified that he also looked at the officers' files, apparently at the same time, but could not recall what they contained.

The government's evidence consisted of a statement from the appellant, and possible testimony from Mr. Alzaga, the alien to whom the false immigration document allegedly was delivered. Appellant's counsel was not sure whether he saw appellant's statement. He did not investigate the circumstances in which appellant gave the statement, although it was given after appellant had been in custody for some twelve hours without being taken before a United States Commissioner. See McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). He did not interview Mr. Alzaga to determine whether he would testify against appellant and, if so, what his testimony would be, although Mr. Alzaga was available since he was also in federal custody, and his willingness to testify for the government was at least doubtful since he too was charged with an offense and was awaiting trial.

The question is not whether appellant's counsel was qualified by training and experience to render effective legal assistance to appellant, but whether he did so. Brubaker v. Dickson, 310 F.2d, supra at 37. The record demonstrates that he did not.

Second, appellant's conviction should be vacated because he was not aware of the consequences of his plea. "[A] plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927). See Munich v. United States, 337 F.2d 356, 359 (9th Cir. 1964); cf. Heiden v. United States, 353 F.2d 53 (9th Cir. 1965).

As noted above, appellant's deportation was required by 8 U.S.C. § 1251(a) (5) upon conviction under 18 U.S.C. § 1546. Appellant was not advised of this fact. On the contrary, he was told that deportation, though probable, might still be avoided.

It is true that United States v. Parrino, 212 F.2d 919 (2d Cir. 1954), holds that deportation for a crime involving moral turpitude—the ground for deportation now appearing in section 1251(a) (4), to which section 1251(a) does apply—is only a "collateral" consequence of conviction of such a crime. *Parrino* is distinguishable since in the present case deportation was mandatory rather than discretionary. In any event, "the vigorous dissent of Judge Frank more likely reflects the present attitude of the federal judiciary." 8 Moore, Federal Practice ¶ 32.07 [3] at 32–47 (1967).

Surely it would be pure fiction to say that the result which 8 U.S.C. § 1251 (a) (5) states must follow conviction under 18 U.S.C. § 1546 is nonetheless not a "consequence" of such a conviction. Such a holding would drain the substance from the requirement that a guilty plea may be accepted only if made "with full understanding of the consequences."