**UNITED STATES of America ex rel.
Joseph D. HARDY, Petitioner,**

v.

**Hon. Daniel McMANN, Warden, Auburn
Prison, Auburn, N. Y., Respondent.**

No. 68 Civ. 2595.

United States District Court
S. D. New York.

Nov. 1, 1968.

Joseph D. Hardy, petitioner pro se.

Carl A. Vergari, Dist. Atty. of Westchester County, White Plains, for respondent, B. Anthony Morosco, Asst. Dist. Atty., of counsel.

## OPINION

MacMAHON, District Judge.

Petitioner Joseph D. Hardy, presently confined in Auburn State Prison, Auburn, New York, was convicted by a jury of murder in the second degree and burglary in the third degree. The County Court of Westchester County, on June 2, 1965, imposed concurrent sentences of twenty years to life and five to seven years, respectively. The conviction was affirmed by the Appellate Division and the New York Court of Appeals.[1] Petitioner now contends that his constitutional rights were violated.

Specifically, petitioner claims denial of due process by (1) errors of the trial court in ruling on evidence and in its charge; (2) failure to hold a preliminary felony hearing on the question of probable cause; (3) failure of the police to warn of his rights before he confessed; (4) admission of his confession without a prior hearing on voluntariness; (5) police deception in interrogating him and (6) incompetent counsel. His claims are all without merit.

The claimed errors of the trial court consist of the admission of testimony regarding the victim's outcry, the sustaining of an objection to petitioner's attempt to explain the confession, and the failure to charge the jury on the issue of voluntariness in the language of § 395, New York Code of Criminal Procedure.

The testimony of the victim's outcry was admitted under the spontaneous declaration exception to the hearsay rule. Petitioner's contention that the trial court denied him the opportunity to explain his confession is inaccurate. He could have put forward any explanation of the confession upon a voir dire at the time the confession was offered.[2] He did not do so, although the record reveals that at other times during the trial he effectively used this procedure. Actually, he eventually did explain to the jury that he confessed because he was told by the police that he would be allowed to see the victim.[3]

It is unnecessary, however, to decide whether the state court committed reversible error in allowing testimony of the outcry or in refusing to allow petitioner to explain his confession, because errors in a state court's evidentiary rulings are not grounds for federal habeas corpus relief.[4]

1. People v. Hardy, 28 App.Div.2d 909, 282 N.Y.S.2d 955 (2d Dep't 1967), aff'd, 21 N.Y.2d 854, 236 N.E.2d 163, 288 N.Y. S.2d 1008 (1968).

2. People v. Fox, 121 N.Y. 449, 24 N.E. 923 (1890); People v. Tuomey, 17 App. Div.2d 247, 234 N.Y.S.2d 318 (2d Dep't 1962).

3. Trial transcript, pp. 403–405.

4. Spencer v. State of Texas, 385 U.S. 554, 562–564, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967); Lisenba v. People of State of California, 314 U.S. 219, 227–228, 62 S. Ct. 280, 86 L.Ed. 166 (1941); United States ex rel. Green v. McMann, 268 F. Supp. 529, 531 (S.D.N.Y.1967).

The alleged error in not charging the jury in the language of § 395 of the New York Code of Criminal Procedure on the issue of voluntariness does not raise a federal question, for, as we shall see, there was no real issue of voluntariness in the case. In any event, the court's charge adequately instructed the jury that it must be convinced beyond a reasonable doubt that the admissions were not obtained "under the influence of fear produced by threats, whether expressed or implied."[5] This is essentially the language of § 395 omitting only the nonconstitutional requirement of corroborative proof.

■ Petitioner's claim (2) must be rejected because it is not a violation of a federally-protected right for a state to deny an accused a preliminary hearing on the existence of probable cause.[6]

Petitioner's claims (3), (4) and (5) relate to his confession which the trial court allowed in evidence. We now consider those claims.

As to claim (3), petitioner argues that although his case was tried prior to Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), it was tried after Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and therefore, he contends, *Escobedo* applies. Petitioner interprets *Escobedo* as requiring the police to warn a suspect of his right to counsel, to remain silent and that anything he says may be used against him. Petitioner alleges that he was denied due process because he was not given these warnings.

■ Since his trial took place before the decision in *Miranda*, that case does not apply to his case.[7] Petitioner

is correct in arguing that *Escobedo* applies, but we must reject his interpretation of *Escobedo*. Petitioner asks us to hold that both *Escobedo* and *Miranda* require the same three warnings to be given to a suspect who becomes the focus of a police investigation. To so hold would render meaningless the Supreme Court's decision applying *Miranda* prospectively.

The exact scope of *Escobedo* is unclear, but if the Supreme Court were of the opinion that *Escobedo* required the police to warn a suspect of his so-called "*Miranda* rights," it would not have been necessary for the court to concern itself with the prospective or retroactive application of *Miranda*.[8]

■ The admission of petitioner's confession is therefore not a violation of due process just because he was not warned of his *Miranda* rights.

As to claim (4), petitioner argues that he was denied protection against self-incrimination because he was not told that the victim was dead prior to giving his confession. Actually, petitioner is claiming that his confession was involuntary because of this alleged police deception.

Wholly apart from *Miranda* or *Escobedo*, the safeguards there enunciated may be invoked as part of a claim collaterally challenging a confession as involuntary provided the procedural prerequisites are met.[9]

■■ A confession is deemed involuntary and therefore violative of the Fourteenth Amendment when it can be established that the petitioner's will was "overborne" to such a degree that the confession cannot be said to be a free act.[10] To determine this question, all

---

5. Trial transcript, p. 442.

6. United States ex rel. Combs v. Denno, 231 F.Supp. 942, 944 (S.D.N.Y.1964), aff'd, 357 F.2d 809 (2d Cir.), cert. denied, 385 U.S. 872, 87 S.Ct. 144, 17 L. Ed.2d 99 (1966).

7. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

8. Ibid.

9. Id., 384 U.S. at 730, 86 S.Ct. 1772, 16 L.Ed.2d 882.

10. Reck v. Pate, 367 U.S. 433, 440, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961).

the circumstances attendant upon the confession must be taken into account.

Petitioner here alleges only two facts in support of this claim of involuntariness: lack of *Miranda* warnings and nondisclosure by the police of the victim's death. In cases finding a confession involuntary, there were present a number of rather impelling circumstances which clearly evidenced extreme coercion.[11]

■ None of these facts are alleged here. Assuming the truth of the two facts alleged, we find them insufficient to support the claim of involuntariness. Without more, we reject the contention that petitioner's confession was coerced.

As to claim (5), petitioner argues that he was denied a fair trial because his confession was admitted into evidence without a prior judicial determination of voluntariness.

■ The United States Supreme Court, in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), held that whenever a defendant raises an issue of voluntariness, he is entitled to a prior determination by a judge as to whether it is voluntary beyond a reasonable doubt. If, as here, the defendant never raises the issue of voluntariness at trial, and the judge gratuitously charges the jury that it must find the confession to be voluntary, there is no denial of any rights guaranteed by *Jackson*. Even if we were to assume that *Jackson* were technically violated, there would be no reason to hold a hearing since we have rejected petitioner's argument of involuntariness.

Finally, petitioner claims that he was represented by incompetent counsel and that he was therefore denied his constitutional right to effective assistance of counsel. Petitioner relies on his attorney's statement at sentencing that he felt incompetent to handle the case because he was unable to communicate with petitioner. Petitioner also points to his allegation that counsel visited him only twice prior to trial and that all he attempted to do was to convince him to plead guilty.

■ Petitioner must do more than allege incompetency of counsel. He must point to specific prejudice upon the trial resulting from the alleged incompetency.[12] The amount of time necessary to prepare a case varies with its complexity and counsel's familiarity with the law and facts.[13] Counsel's incompetence must result in a trial that is a "farce and a mockery of justice."[14] The constitutional guarantee of effective assistance of counsel does not require perfection. It rather aims to preserve the essential integrity of the proceedings as a trial.[15] The mere failure to make an intensive investigation does not make the trial a farce or a mockery

---

11. Each of these cases had at least some · of the following factors: (1) held incommunicado for long periods: Reck v. Pate, supra (4 days); Haynes v. State of Washington, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963) (5 to 7 days); (2) interrogation for long periods: Ashcraft v. State of Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192 (1944); (3) a large group of official interrogators firing questions at the suspect: Reck v. Pate, supra; Spano v. People of State of New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); (4) physical brutality: Reck v. Pate, supra; Brown v. State of Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936); (5) threats of mob violence: Payne v. State of Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958); (6) threats against defendant's family: Harris v. State of South Carolina, 338 U.S. 68, 69 S.Ct. 1354, 93 L.Ed. 1815 (1949); (7) defendant's subnormal intelligence: Reck v. Pate, supra; (8) youthfulness: Payne v. State of Arkansas, supra; (9) use of a former boyhood friend as an interrogator: Spano v. People of State of New York, supra.

12. United States v. Trigg, 392 F.2d 860, 863 (7th Cir. 1968).

13. United States v. Wight, 176 F.2d 376 (2d Cir. 1949), cert. denied, 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950).

14. United States v. Wight, supra.

15. United States v. Stahl, 393 F.2d 101, 104 (7th Cir. 1968).

of justice.[16] Nor does the conclusory statement of petitioner's attorney at sentencing direct us to any particular prejudice resulting from the attorney's alleged feeling of incompetence. Indeed, such statements must be considered cautiously lest defendants be granted an easy escape from justice. Surely petitioner is not to be rewarded by a reopening of his case for his own refusal to consult with his own counsel.

Petitioner's claim of denial of the effective assistance of counsel is rejected for failure to allege facts showing prejudice at the trial itself.

The petition raises no issues of fact requiring a hearing. Petitioner's application for a writ of habeas corpus is therefore denied without a hearing, and a certificate of probable cause will not be issued by this court.

So ordered.

16. Vizcarra-Delgadillo v. United States, 395 F.2d 70 (9th Cir. 1968).