**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**ANTHONY PAMPHILE, Defendant**

Criminal No. 82/133

**ANTHONY PAMPHILE, Petitioner**

**v.**

**IMMIGRATION & NATURALIZATION SERVICE, Respondent**

Civil No. 85/13

District Court of the Virgin Islands

Div. of St. Croix

March 18, 1985

ANDREW J. REICH, ESQ., Assistant U.S. Attorney, Christiansted, St. Croix, V.I., *for plaintiff/respondent*

BRIAN L. MASONY, ESQ., Christiansted, St. Croix, V.I., *for defendant/ petitioner*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

This case is before the Court on defendant Anthony Pamphile's ("Pamphile") motion to withdraw his guilty plea. Pamphile argues

that his guilty plea should be set aside on the basis that his counsel, at the time he pled guilty, was ineffective in failing to advise him that his guilty plea could render him subject to deportation.

We find deportation is a "collateral" consequence of pleading guilty. The failure of a defense attorney to inform a defendant of possible or mandatory deportation, prior to entry of a valid guilty plea, does not render such plea subject to attack under Fed. R. Crim. P. 32(d) or 28 U.S.C. § 2255. We deny the defendant's motion to withdraw his guilty plea.

## I. FACTS

On September 23, 1982, Pamphile was charged with assault in the first degree and possession of a sawed-off shotgun during the commission of a crime of violence. After plea negotiations, Pamphile pled guilty to assault in the third degree and to possession of a sawed-off shotgun. He was never told that if he pled guilty to the charge of possession of a sawed-off shotgun he could be deported. 8 U.S.C. § 1251(a)(14).

In December 1982 Pamphile was sentenced to four (4) years on the assault third degree count and two (2) years on the possession of a sawed-off shotgun count, the sentences to run concurrently.

In September, 1983, the Immigration and Naturalization Service secured a deportation order against Pamphile under 8 U.S.C. § 1251(a)(14). The Virgin Islands Parole Board then granted Pamphile an early release which made him subject to deportation on January 22, 1985.

The Court held an emergency hearing on January 21, 1985 at which time the issue of ineffective assistance of counsel was raised. We ordered a stay in the immigration proceedings pending the outcome of a second hearing held on February 13, 1985.

## II. DISCUSSION

A) *Rule 11 Hearing*

■ It is clear that a District Court is not required to inform a defendant that one of the consequences of his decision to plead guilty could be deportation.[1] United States v. Russell, 686 F.2d 35, 39 (D.C.

---

[1] Fed. R. Crim. P. 11(c) states:
 (c) Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform him of, and determine that he understands, the following:
 (1) the nature of the charge to which the plea is offered, the mandatory min-

Cir. 1982); Fruchtman v. Kenton, 531 F.2d 946, 949 (9th Cir. 1976), cert. denied, 429 U.S. 895 (1976); Cordero v. United States, 533 F.2d 723, 726 (1st Cir. 1976); Michel v. United States, 507 F.2d 461, 465 (2d Cir. 1974); United States v. Santelises, 476 F.2d 787, 789 (2d Cir. 1973).

■ A defendant must be informed of the direct consequences, not the collateral consequences, of a guilty plea in order to voluntarily and intelligently plead guilty. Russell, supra, at 38; United States v. King, 618 F.2d 550, 552 (9th Cir. 1980); Johnson v. Dees, 581 F.2d 1166, 1166 (5th Cir. 1978); Fruchtman, supra, at 948–49; Cordero, supra, at 726; Michel, supra, at 465. Deportation is a collateral consequence and therefore need not be included in the Rule 11 litany of direct consequences of a plea of guilty. Russell, supra, at 39; Fruchtman, supra, at 949; Cordero, supra, at 726; Michel, supra, at 465.

B) *Ineffective Assistance of Counsel*

1) *Standard for Collateral Review*

A more troublesome issue concerns the argument first raised at the emergency hearing—that Pamphile's plea should be withdrawn because his counsel failed to inform him of the possibility of deportation should he plead guilty. This issue, though not novel, is one of first impression in a number of jurisdictions including the Virgin Islands.

We note that the defendant has not only moved to withdraw his guilty plea under Fed. R. Crim. P. 32(d) but has also filed a motion to vacate his sentence under 28 U.S.C. § 2255. Fed. R. Crim. P. 32(d) was amended in 1983 and now states:

imum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole term; and

(2) if the defendant is not represented by an attorney, that he has the right to be represented by an attorney at every stage of the proceeding against him and, if necessary, one will be appointed to represent him; and

(3) that he has the right to plead not guilty or to persist in that plea if it has already been made, and he has the right to be tried by a jury and at that trial has the right to the assistance of counsel, the right to confront and cross-examine witnesses against him, and the right not to be compelled to incriminate himself; and

(4) that if his plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which he has pleaded, that his answers may later be used against him in a prosecution for perjury or false statement.

If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, imposition of sentence is suspended, or disposition is had under 18 U.S.C. § 4250(c), the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255.[2]

Pamphile has proceeded too late to obtain the more generous "fair and just reason" standard for presentence relief under Rule 32(d) and therefore must seek relief via § 2255. Relief may be had under § 2255 when there has been "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962).[3]

---

[2] Old Rule 32(d) stated:

A motion to withdraw a plea of guilty or nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea.

[3] The 1983 amendment to Rule 32(d) was intended to clarify the confusion which existed under the old rule. The old rule did not articulate any standard for presentence relief, the only standard mentioned in that rule was the "manifest injustice" standard which applied to post-sentence relief.

The 1983 amendments include the "fair and just reason" standard for presentence relief but post-sentence relief must be sought by direct appeal or motion under 28 U.S.C. § 2255.

There is authority that the old Rule 32(d) "manifest injustice" standard is indistinguishable from the § 2255 "complete miscarriage of justice" standard. United States v. Hamilton, 553 F.2d 63 (10th Cir. 1977). The end results are often the same in § 2255 and Rule 32(d) guilty plea cases. The comments to amended Rule 32(d) state

Relief has often been granted or recognized as available via either of these routes for essentially the same reasons: that there exists a complete constitutional bar to conviction on the offense charged, Brooks v. United States, 424 F.2d 425 (5th Cir. 1970) (§ 2255), United States v. Bluso, 519 F.2d 473 (4th Cir. 1975) (Rule 32); that the defendant was incompetent at the time of his plea, United States v. Masthers, 539 F.2d 721 (D.C. Cir. 1976) (§ 2255), Kienlen v. United States, 379 F.2d 20 (10th Cir. 1967) (Rule 32); and that the bargain the prosecutor made with defendant was not kept, Walters v. Harris, 460 F.2d 988 (4th Cir. 1972) (§ 2255), United States v. Hawthorne, 502 F.2d 1183 (3d Cir. 1974) (Rule 32). Perhaps even more significant is the fact that relief has often been denied under like circumstances whichever of the two procedures was used: a mere technical violation of Rule 11, United States v. Timmreck, 441 U.S. 780 (1979) (§ 2255), United States v. Saft, 558 F.2d 1073 (2d Cir. 1977) (Rule 32); the mere fact defendants expected a lower sentence, United States v. White, 572 F.2d 1007 (4th Cir. 1978) (§ 2255), Masciola v. United States, 469 F.2d 1057 (3rd Cir. 1972) (Rule 32); or mere familial coercion, Wojtowicz v. United States, 550 F.2d 786 (2d Cir. 1977) (§ 2255), United States v. Bartoli, 572 F.2d 188 (8th Cir. 1978) (Rule 32).

We find that cases which followed the old Rule 32(d) "manifest injustice" standard can be used as authority for the § 2255 issue before us.

## 2) *Standard for Ineffective Assistance of Counsel*

 Since Gideon v. Wainwright, 372 U.S. 335 (1963) a defendant pleading guilty to a felony charge has a federal right to the assistance of counsel. See Arsenault v. Massachusetts, 393 U.S. 5 (1968); White v. Maryland, 373 U.S. 59 (1963). This right to counsel has long been recognized as a right to the effective assistance of counsel. See Reece v. Georgia, 350 U.S. 85, 90 (1955); Glasser v. United States, 315 U.S. 60, 69–70 (1942); Avery v. Alabama, 308 U.S. 444, 446 (1940); Powell v. Alabama, 287 U.S. 45, 47 (1932). The standard for determining the adequacy of legal services is whether the attorney has exercised the customary skill and knowledge which normally prevails at that time and place. United States v. Williams, 615 F.2d 585, 593–94 (3d Cir. 1980).

█ Pamphile has the burden of proving that his counsel was ineffective, Williams, supra, at 594 (citing United States ex rel. Johnson v. Johnson, 531 F.2d 169, 174 (3d Cir.), cert. denied, 425 U.S. 997 (1976)); United States v. Tiler, 602 F.2d 30, 35 (2d Cir. 1979) and must demonstrate that the advice of his counsel was "not within the range of competence demanded of attorneys in criminal cases" in order to be entitled to collateral relief. Tollett v. Henderson, 411 U.S. 258, 266 (1973) (criminal defendant who pleads guilty on the advice of counsel is not automatically entitled to federal collateral relief on proof that the indicting grand jury was unconstitutionally selected) (citing McMann v. Richardson, 397 U.S. 759, 771 (1970)); VIA v. Superintendent, Powhatan Correctional CTR, 643 F.2d 167, 171 (4th Cir. 1981).

## 3) *Effective Assistance of Counsel for Defendants Who Plead Guilty*

█ An ineffective assistance of counsel argument is immaterial in an attempt to impeach a plea of guilty except to the extent that it bears on the issues of voluntariness and understanding. Lee v. Hopper, 499 F.2d 456, 462 (5th Cir.), cert. denied, 419 U.S. 1053 (1979) (citing Edwards v. United States, 103 U.S. App. D.C. 152, 156 F.2d 707, 709–710, cert. denied, 358 U.S. 847 (1958)).

This Court has been unable to discover any cases where a federal court has granted collateral relief to a prisoner, based on an involuntary plea, because counsel failed to inform the defendant that deportation could occur should he plead guilty.[4] Although a few

---

[4] Some federal cases, in dicta, have mentioned this issue. In Michel v. United States, supra, at 465 the Second Circuit stated:

state jurisdictions do allow such relief,[5] we believe the better rule is to deny collateral relief in such circumstances.

We believe that the attorney's failure to inform Pamphile of the possibility of deportation does not cause Pamphile's guilty plea to be involuntary. A variety of cases support our holding.

In United States v. Parrino, 212 F.2d 919 (2d Cir.), cert. denied, 348 U.S. 840 (1954) the defendant moved under Rule 32(d) to withdraw his guilty plea after he had served most of his two (2) year sentence. Prior to changing his plea the defendant's attorney told him that a guilty plea would not subject him to deportation. The Second Circuit held that surprise which results from erroneous information received from the defendant's own attorney, without a clear showing of unprofessional conduct, is not enough to set aside a conviction. The Court stated:

> Moreover, here the subject matter of the claimed surprise was not the severity of the sentence directly flowing from the judgment but a collateral consequence thereof, namely deportability. . . . We think it plainly unsound to hold, as now in principle we are urged to hold, that such defendants are subjected to manifest injustice, if held to their plea, merely because they did not understand or foresee such collateral consequences.

We have insisted that even the indigent be represented by counsel, and we cannot seriously expect that the amendment to Rule 11 was intended to relieve counsel of his responsibility to his client. Where his client is an alien, counsel and not the court has the obligation of advising him of his particular position as a consequence of his plea.

Although we agree that defense counsel should inform defendants about the possibility of deportation if the defendant chooses to plead guilty, we do not, however, agree that failure to inform the defendant of one specific collateral consequence automatically creates an issue of ineffective assistance of counsel which satisfies the standard for § 2255 relief as articulated in Hill v. United States, supra at 428.

Another federal case is United States v. Briscoe, 432 F.2d 1351, 1353 (D.C. Cir. 1970) where the Court stated "Under appropriate circumstances the fact that a defendant has been misled as to the consequence of deportability may render his guilty plea subject to attack." In the facts before us it is clear that Pamphile was not misled as to the consequence of his plea of guilty as it pertained to deportability.

Finally, in United States v. Shapiro, 222 F.2d 836 (7th Cir. 1955), the Court allowed the defendant to withdraw his plea of nolo contendere. The defendant mistakenly believed he was a naturalized United States citizen and was understandably surprised when the Government instituted deportation proceedings against him. In the case before us there is no evidence that Pamphile mistakenly believed he was a U.S. citizen.

[5] People v. Correa, 124 Ill. App. 3d 668, 465 N.E.2d 507 (1984); Commonwealth v. Wellington, 451 A.2d 223 (Pa. Super. Ct. 1982); Edwards v. State of Florida, 393 So.2d 597 (Fla. Dist. Ct. App. 1981).

Parrino, supra at 921–22.[6]

If erroneous information concerning deportability is not sufficient to allow a defendant to withdraw his guilty plea, then the failure to inform a defendant about deportability should not be sufficient to allow Pamphile the collateral relief he seeks.

In United States v. Sambro, 454 F.2d 918 (D.C. Cir. 1971) the defendant's attorney erroneously informed him about the legal effect of his guilty plea on his chances of being deported. Once deportation proceedings began, the defendant sought to withdraw his guilty plea. The D.C. Circuit held that the District Court Judge had not abused her discretion by refusing to allow the defendant to withdraw his guilty plea. The Court emphasized that the original plea was properly taken and that the defendant never repudiated the prior plea. The Court stated "a plea of guilty is a confession in open court as to the facts alleged: in the instant case appellant Sambro has made such a confession, has said nothing whatever to repudiate it, nor has he claimed any legal defense to the charge." Sambro, supra, at 922–21.[7] The Sambro Court also cited its earlier decision in Briscoe v. United States, 129 U.S. App. D.C. 146, 391 F.2d 984 (1968) stating:

> This court confronted a converse situation in Briscoe where appellant sought to set aside his guilty plea as involuntary. While the case was remanded for determination of the voluntariness of his guilty plea on other grounds, this court held, "We do not accept appellant's contention that his guilty plea must be set aside as involuntary because it was induced by his misunderstanding, in that he thought he was in fact to be deported."

---

[6] This early holding from the Second Circuit must be read in conjunction with the later Second Circuit holding in Michel, supra.

[7] The D.C. Circuit cited Brady v. United States, 397 U.S. 742 (1970) for a similar proposition. In Brady the defendant sought post-conviction relief on the ground that had he known of a subsequent Supreme Court decision at the time of his plea, he never would have pled guilty. The Supreme Court rejected Brady's argument stating:

"Central to the plea and the foundation for entering judgment against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment."

Brady, supra at 748.

The Supreme Court also stated:

The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision.

Brady, supra at 757.

Sambro, supra, at 923.

In Vizcarra-Delgaldillo v. United States, 395 F.2d 70 (9th Cir. 1968) defense counsel erroneously believed the trial court had the discretion to spare the defendant from deportation. In fact the relevant statute provided that deportation was mandatory and the trial court had no authority to recommend that the defendant not be deported.[8] The Ninth Circuit affirmed the District Court's denial of § 2255 relief and held the defendant had received effective assistance of counsel.

In United States v. Russell, supra, at 39 the D.C. Circuit stated "it has frequently been held that defendants are not entitled to withdraw pleas under Rule 32(d) merely because they misunderstood the possible consequences for deportation."

United States v. Russell, supra, identifies three considerations which District Courts should use as guides when exercising judicial discretion under Rule 32(d).

> The first is the strength of the defendant's reason for withdrawing the plea, including whether the defendant asserts his innocence of the charge. The second is the possible existence of prejudice to the government's case as a result of the defendant's untimely request to stand trial. Finally, the trial court must consider whether the defendant's misunderstanding of the collateral consequences of the plea is the result of misleading

---

[8] The opinion only alludes to the advice counsel gave to his client, stating

being deeply concerned that appellant, a young Mexican national, would surely be deported if convicted, counsel carefully explained appellant's rights, the government's burden and the punishment if guilt was established. Appellant, nevertheless, stated that he wanted 'to get it over with.'

Vizcarra-Delgadillo, supra at 71.

Judge Browning's dissent, on the other hand, explains in more detail the preparation of defendant's counsel and the advice defense counsel gave the defendant concerning deportation. The court quoted the defense counsel who stated:

'the main thing I was banking on was trying to get sympathy from the judge to allow [appellant] to remain in the United States, because this was obviously his wish.' Accordingly, counsel's only appeal on appellant's behalf at sentencing was that the court 'allow him to maintain his alien residence status in the United States.'

Vizcarra-Delgadillo, supra at 73.

In fact the appropriate statute stated that deportation was mandatory and that the trial court had no discretion to recommend the defendant be spared deportation. Defense counsel had failed to research or read the appropriate immigration statute and his entire effort on behalf of the defendant was directed at achieving a legally impossible result.

statements by governmental authorities or the defendant's own ignorance.[9]

U.S. v. Russell, *supra*, at 39.

■ Applying these factors to the present case, we find these factors all militate against Pamphile's claim for collateral relief. First, the defendant has never asserted his innocence to the charge.[10] At the time fixed for trial the Government had an overwhelming array of evidence against Pamphile. Second, the Government might be greatly prejudiced should we now allow Pamphile to stand trial. The events which would be at issue occurred two and one-half years ago. To expect the prosecution to resurrect a case left dormant for so long might be unfair. Finally, it is clear that Pamphile's misunderstanding of the collateral consequences of the plea is not the result of any misleading statements by the government but solely due to the defendant's ignorance and the ignorance of his counsel.

In summary we find that the failure of Pamphile's attorney to inform Pamphile about the possibility of deportation does not render Pamphile's plea involuntary. We will therefore deny collateral relief under § 2255.

## ORDER

THIS MATTER is before the Court on Petitioner's motion to withdraw his guilty plea. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED:

That the motion to withdraw defendant's guilty plea be, and the same, is hereby DENIED.

---

[9] The Third Circuit in United States v. Crowley, 529 F.2d 1066, 1072 (3d Cir.), cert. denied, 425 U.S. 995 (1976) has a similar list from which the Russell court obtained the first two factors. In denying the defendant relief, the Third Circuit articulated these factors as:

 A) The failure of the defendant to assert he was innocent of the charge.

 B) The existence of prejudice to the Government through defendant's entering the plea on the day of trial (November 21), when jurors, witnesses and court personnel had been assembled for the trial, and then making the request for withdrawal of the plea several days later (November 26, or thereafter).

 C) The weakness of the reason for withdrawal of the guilty plea.

[10] We do note that there may be a possible question of self-defense, however, the defendant still admits he committed the acts which originally brought him before this Court.