# BRIAN PETER ELMOUR, Appellant
## v.
# GOVERNMENT OF THE VIRGIN ISLANDS, Appellee

D.C. Crim. App. No. 2003/23

District Court of the Virgin Islands

Division of St. Croix

June 24, 2005

*For Appellant*: ESZART WYNTER, ESQ., St. Croix, U.S.V.I.

*For Appellee*: MAUREEN PHELAN, AAG, St. Thomas, U.S.V.I.

FINCH, *Chief Judge, District Court of the Virgin Islands*; GOMEZ, *Judge of the District Court of the Virgin Islands*; and HODGE, *Judge of the Superior Court, Sitting by Designation.*

## MEMORANDUM OPINION

(June 24, 2005)

Brian Peter Elmour ["Elmour" or "appellant"] was convicted in the Superior Court after he pled guilty to the crime of third degree assault. He now faces deportation in a separate proceeding as a result of that conviction and challenges his plea and the effectiveness of his trial counsel. We are now asked to decide:

1) Whether a defense attorney's representation is ineffective in violation of the Sixth Amendment right to counsel, warranting withdrawal of the guilty plea, where he fails to accurately advise and, in fact, misinforms, an alien defendant regarding the immigration consequences of conviction, upon which the defendant relied in entering a plea of guilty.[1]

2) Whether, in the proceedings pursuant to a plea agreement, the court's failure to ascertain that an alien defendant is advised that he would be subject to mandatory deportation as a result of his conviction constitutes a denial of due process of law, in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution.

3) Whether, in the proceedings pursuant to a plea agreement, the court's failure to advise an alien defendant that he would be subject

---

[1] This issue incorporates appellant's issues 1 and 2. [See Br. of Appellant at 1-2].

452

to mandatory deportation as a result of his conviction constitutes a denial of equal protection of the laws, in violation of the Fourteenth Amendment to the U.S. Constitution.

As more fully stated below, Elmour's challenges to his conviction based on the court's and his counsel's failure to advise him of the immigration consequences must fail, because such advice is not a constitutional requisite to a valid plea. We decline to reach Elmour's claim that his defense counsel provided constitutionally defective representation in misinforming, or inaccurately informing, him of those consequences, because the appellate record is not sufficiently developed to permit a determination of that issue. Elmour's claim that the court's failure to so advise him violated constitutional equal protection was not raised below and is not properly raised on appeal.

## I. STATEMENT OF FACTS & PROCEDURAL POSTURE

The facts of this case are largely undisputed. Elmour was born in England and relocated with his family to the United States and the Virgin Islands at the age of two. He has attained resident alien status.

Following a fight in his apartment, in which he stabbed his roommate, Elmour was charged with assault third degree and possession of a dangerous weapon. While represented by counsel, Elmour entered a guilty plea to the charge of third-degree assault. After a Rule 11 proceeding, the trial court accepted his guilty plea; and Elmour received a three-year sentence, all of which was suspended. Additionally, he was sentenced to five years supervised probation, 200 hours community service, and ordered to make restitution to the victim.

In November, 2002, federal deportation proceedings were instituted against Elmour. Those proceedings are ongoing. Elmour contends that it was only after those proceedings were initiated that he became aware that his guilty plea made him subject to deportation. He argues neither the court nor his defense counsel informed him of those consequences.

After deportation proceedings were instituted against him, Elmour petitioned the trial court first to reduce his sentence to bring it outside the classes of deportable offenses or punishment ranges which made him deportable. The trial court denied that motion for lack of jurisdiction.

Appellant then filed a motion to withdraw his guilty plea, in which he argued the court and counsel had failed to inform him that he could be

453

deported as a direct result of his guilty plea, offending due process and his right to effective representation. That motion was also denied, and this timely appeal followed.

Separately, Elmour has also filed a petition for habeas corpus relief in federal court. *See* D.C. Civ. No. 2004-154. That action, too, remains pending.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ This Court has jurisdiction to review a conviction entered upon a guilty plea, only to the extent such appeal raises a colorable constitutional claim. *See* The Omnibus Justice Act of 2005, Act No. 6730, § 54 (amending Act No. 6687 (2004)), which repealed 4 V.I.C. §§ 33-40, and reinstating appellate jurisdiction provisions); Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a;[2] *see also, Henry v. Government of Virgin Islands*, 340 F. Supp. 2d 583, 585-86 (D.V.I. App. Div. 2004) (notwithstanding statutory limitation on appeals from guilty pleas, the court must nonetheless review appeals from guilty pleas where constitutional claims are raised) (citing *Virgin Islands v. Warner*, 48 F.3d 688, 691, 31 V.I. 373-92 (3d Cir. 1995)). To the extent a challenge to a guilty plea is based on constitutionally protected rights, our review is plenary.[3] *See Henry*, 340 F. Supp. 2d at 585-86.

■ In reviewing a claim of ineffective assistance of counsel, we adhere to the clearly erroneous standard for reviewing factual findings but must make an independent judgment on whether those facts constitute constitutionally ineffective assistance of counsel. *See Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1430-31, 33 V.I. 399 (3d Cir.

---

[2] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2003) (preceding V.I. CODE ANN. tit. 1).

[3] SUPER. CT. R. 126 provides that a defendant may withdraw a guilty plea only by permission of the court. Contrary to its federal counterpart, that local rule does not set the time within which a guilty plea may be changed, nor does it make a distinction between changes sought before or after sentencing. *See* SUPER. CT. R. 126; compare FED. R. CRIM. P. 11(e) (prohibiting post-sentencing withdrawals of guilty pleas by the trial court, and permitting consideration of post-sentence challenges to guilty pleas only on collateral attack or direct appeal).

1996) (citing *McAleese v. Mazurkiewicz*, 1 F.3d 159, 166 (3d Cir.), *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 603, 114 S. Ct. 645 (1993)).

## B. Failure to Advise of Immigration Consequences

Elmour argues he was deprived of constitutional due process where: 1) the trial court failed to advise him he could face deportation as a result of his guilty plea, and; 2) where his counsel also failed to so inform and, indeed, misinformed, him of those consequences. On both grounds, the appellant's argument must be rejected.[4]

■ To satisfy constitutional due process, a guilty plea must be both knowing and voluntary. *See* SUPER. CT. R. 126; *see also, Boykin v. Alabama*, 395 U.S. 238, 244, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). A plea satisfies this standard where it reflects "an intelligent admission" that the defendant committed the offense, after having been given "real notice of the true nature of the charge against him." *Henderson v. Morgan*, 426 U.S. 637, 645, and n.13, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976) (quoting *Smith v. O'Grady*, 312 U.S. 329, 334, 85 L. Ed. 859, 61 S. Ct. 572) (noting that a plea may be involuntary where the accused does not understand the nature of the constitutional protections that he is waiving, or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt).

■ It is well-settled that the notice requirement for upholding a plea as knowing and voluntary extends only to "direct consequences" of the conviction. *See Government of the V.I. v. Pamphile*, 21 V.I. 348, 604 F. Supp. 753 (D.V.I. 1985) ("A defendant must be informed of the direct consequences, not the collateral consequences, of a guilty plea in order to voluntarily and intelligently plead guilty.") (citations omitted); *Brady v. United States*, 397 U.S. 742, 755, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970) (noting the accused must be "fully aware of the direct

---

[4] Elmour additionally argues the court's failure to inform him of those consequences violated the Fourteenth Amendment's equal protection guarantee. Because Elmour limited his arguments below to constitutional due process and did not raise an equal protection challenge, we will decline to reach that issue on appeal. *See Altman v. Altman*, 653 F.2d 755, 758 (3d Cir. 1981) (noting that, absent "exceptional circumstances" amounting to manifest injustice, an issue not raised in the trial court will not be heard on appeal) (citations omitted); *Singleton v. Wulff*, 428 U.S. 106, 120-22, 49 L. Ed. 2d 826, 96 S. Ct. 2868 (1976). Thus, we address only his argument that his claim was made involuntary by the failure to inform.

consequences of a guilty plea"); *compare*, FED. R. CRIM. P. 11(b) (outlining the information regarded as material to plea proceeding).[5]

■ "Direct consequences" which must be constitutionally noticed have been defined as those which have a "definite, immediate and largely automatic effect on the range of the defendant's punishment." *Parry v. Rosemeyer*, 64 F.3d 110, 114 (3d Cir. 1995), *cert. denied*, 516 U.S. 1058, 133 L. Ed. 2d 684, 116 S. Ct. 734 (1996) (noting that the "only consequences considered direct are the maximum prison term and fine for the offense charged.") (internal quotation marks omitted). Conversely, there is no constitutional requirement to notify a defendant of consequences which are merely "collateral"—or not directly related— to the conviction and sentence. *See United States v. Romero-Vilca*, 850 F.2d 177, 179 (3d Cir. 1988) ("A collateral consequence is one that is not related to the length or nature of the sentence imposed on the basis of the plea."), (citation omitted); *El-Nobani v. United States*, 287 F.3d 417 (6th Cir. 2002) (defining collateral consequence as "one that remains beyond the control and responsibility of the district court in which the that conviction was entered").

---

[5] The advice required by Rule 11 is as follows:

 (A) the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

 (B) the right to plead not guilty, or having already so pleaded, to persist in that plea;

 (C) the right to a jury trial;

 (D) the right to be represented by counsel—and if necessary have the court appoint counsel—at trial and at every other stage of the proceeding;

 (E) the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

 (F) the defendant's waiver of these trial rights if the court accepts the plea of guilty or nolo contendere;

 (G) the nature of each charge to which the defendant is pleading;

 (H) any maximum possible penalty, including imprisonment, fine, and term of supervised release;

 (I) any mandatory minimum penalty;

 (J) any applicable forfeiture;

 (K) the court's authority to order restitution;

 (L) the court's obligation to impose a special assessment ...

FED. R. CRIM. P. 11(b)(1)(A)-(L). That rule additionally requires the court to determine that there exists a factual basis for the plea and that the plea was voluntary.

The appellant's argument that the prospect of deportation comes within the direct consequences which must be noticed is not novel. Indeed, as the appellant acknowledges, [*See* Br. of Appellant at 18], that argument has been visited and consistently rejected by the various circuits, including the Third Circuit Court of Appeals, which all deem deportation as a collateral consequence which the court is under no duty to notice. *See e.g., Romero-Vilca*, 850 F.2d at 179; *El-Nobani*, 287 F.3d 417; *United States v. Sambro*, 147 U.S. App. D.C. 75, 454 F.2d 918, 920 (C.A.D.C. 1971); *United States v. Santelises*, 476 F.2d 787, 789 (2d Cir. 1973); *Ramos v. United States*, 840 A.2d 1292 (D.C. 2004). In *United States v. Cariola*, 323 F.2d 180 (3d Cir. 1963), the court of appeals noted the absurdity of imposing on courts the burden to notify defendants of the myriad of legally significant adverse consequences flowing from a guilty plea:

> The collateral effect of a federal conviction varies, depending upon the offense, and whether state or federal law is involved ... . The effect of a conviction as an admission in a later civil action, upon the credibility of the defendant as a witness, his right to vote, his qualification to hold office, its sentencing significance under 'second offender' laws, and its deportation relevance in the case of aliens, are but a few of the areas in which a federal conviction can have important collateral legal significance. Despite the breadth and frequency of the judicial statements that a defendant cannot be held to a plea of guilty which is made without an understanding of its consequences, the factual situations which have occasioned the statements afford no basis for holding that the finality of a conviction depends upon a contemporaneous realization by the defendant of the collateral consequences of his plea.

> Any such requirement would impose upon the judge an impractical burden out of all proportion to the essentials of fair and just administration of the criminal laws.

*Cariola*, 323 F.2d at 186 (citation omitted).

The appellant now argues this Court should depart from the prevailing view that regards deportation as a mere collateral consequence of a conviction, because deportation is now almost certain to follow conviction for certain classes of crimes under amendments to the Illegal

457

Immigration Reform and Immigrant Responsibility Act of 1996 [IIRIRA].[6] Thus, he argues, mandatory deportation amounts to a direct consequence which must be noticed for a valid plea where the conviction provides the basis for the deportation, even though deportation is not technically punishment. We are unpersuaded.

Courts deciding challenges to plea agreements following the 1996 amendment to the IIRIRA have continued to regard such consequences as collateral. In *El-Nobani,* the appellant mounted the identical challenge to his guilty plea, given the 1996 amendments to the IIRIRA. Restating the well-settled distinctions between consequences that are direct or collateral to a conviction, as noted above, the *El-Nobani* court held the fact that the defendant was not made aware of the deportation consequences did not vitiate the knowing or voluntary nature of the plea. *See El-Nobani,* 287 F.3d at 421. That court held, *inter alia,* that "the automatic nature of the deportation proceeding does not necessarily make deportation a direct consequence of the guilty plea," where deportation remained a matter outside the control and responsibility of the district court and, hence, collateral to a conviction. *Id.*

Similarly, in *United States v. Gonzalez,* 202 F.3d 20 (1st Cir. 2000), the court rejected the arguments raised here today. There, the appellant argued that the changes in the IIRIRA made deportation a virtually automatic consequence and, therefore, compelled a change in the view that deportation is merely collateral to such convictions. Rejecting that argument, the court noted, "What renders the plea's immigration effects collateral is not that they arise virtually by operation of law, but the fact that deportation is not the sentence of the court which accept[s] the plea but of another agency over which the trial judge has no control and for which he has no responsibility." *Gonzalez,* 202 F.3d at 27 (*citing Fruchtman v. Kenton,* 531 F.2d 946, 949 (9th Cir. 1976) (quoting *Michel v. United States,* 507 F.2d 461, 465 (2d Cir. 1974)); *United States v. George,* 869 F.2d 333, 337 (7th Cir. 1989) (emphasizing that deportation

---

[6] *See I.N.S. v. St. Cyr,* 533 U.S. 289, 293-97, 150 L. Ed. 2d 347, 121 S. Ct. 2271 (2001) (discussing, in the context of retroactivity of the statute, the changes to deportation decisions brought about by the IIRIRA; noting that statute, along with two other statutes, reduced the number of aliens formerly eligible for discretionary relief under the Immigration and Nationality Act of 1952; *see also,* 8 U.S.C.A. § 1227(2)(A) (noting that aggravated felony is deportable offense, as is any crime for which sentence is one year or longer).

"may result from a criminal prosecution, but is not a part of or enmeshed in the criminal proceeding"); *Sanchez v. United States*, 572 F.2d 210, 211 (9th Cir. 1977) (noting that the key inquiry is whether a consequence "is controlled by an agency which operates beyond the direct authority of the trial judge")); *United States v. Alayun*, 87 Fed. Appx. 263, 265 (3d Cir. 2004) (following the well-settled law that court had no duty to inform defendant in Rule 11 proceeding of possible deportation); *compare, Parry*, 64 F.3d at 114 (noting no duty to inform of collateral consequences, even those that are serious and foreseeable). Thus, the fact that deportation may now be a more certain consequence does not transform it—or other adverse effects which are certain to follow conviction—into punishment for purposes of a valid guilty plea.

■ The appellant has submitted no authority to support his argument that the IIRIRA effectively transformed immigration into a direct consequence that must be noticed, or to convince this Court to redefine deportation as a direct punishment. Hence, this Court holds, consistent with precedent, that the specter of deportation following a guilty plea remains collateral to the charge and does not destroy the voluntariness of a guilty plea.[7]

■ For similar reasons, we must also reject Elmour's claims that his counsel's failure to notify him of the deportation consequences of his guilty plea constituted constitutionally defective representation.[8] See

---

[7] As the *Gonzalez* court noted, this is not to say that courts should not, as a matter of principle, advise defendants of deportation consequences attending a guilty plea. *See Gonzalez*, 202 F.3d at 27 n.5. However, it is not a constitutional or statutory requirement to do so.

[8] Whether the representation of counsel was effective, as contemplated under the Sixth Amendment, is determined by an objective standard of reasonableness, based on the prevailing professional standards and practices. *Strickland v. Washington*, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). However, an attorney's performance is to be accorded "highly deferential" review, with a strong presumption in favor of competence. *Strickland*, 466 U.S. at 689-90; *see also, George v. Sively*, 254 F.3d 438, 443, 43 V.I. 351 (3d Cir. 2001). The appellant bears the heavy burden to overcome the presumption of competence by demonstrating: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 689. In the context of a guilty plea, the inquiry under the second Strickland prong becomes whether "there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985).

459

*Government of the V.I. v. Pamphile*, 21 V.I. 348, 604 F. Supp. 753 (D.V.I. 1985) (noting counsel has duty to inform only of direct consequences to plea); *Sambro*, 454 F. 2d at 920 (same); *Varela v. Kaiser*, 976 F. 2d 1357 (10th Cir. 1992) (same).

Although we affirm the trial court's denial of the motion to withdraw the guilty plea for the reasons earlier stated, we decline to reach Elmour's additional claim that his attorney misinformed him of the deportation consequences of a guilty plea. That issue was not raised below.[9] Moreover, the facts surrounding the representation are insufficiently developed to permit full consideration of that claim.[10]

### III. CONCLUSION

In view of the foregoing, the trial court's denial of the appellant's motion to withdraw his guilty plea will be affirmed, as it relates to the court's and defense counsel's failure to inform him that he could be deported. This Court will, however, decline to reach the appellant's equal protection claim and his ineffective assistance of counsel claim based on his attorney's misinformation regarding possible deportation. Neither of

---

When a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "'was within the range of competence demanded of attorneys in criminal cases.'" *Hill*, 474 U.S. at 56 (quoting *McMann v. 1358 Richardson*, 397 U.S. 759, 771, 25 L. Ed. 2d 763, 90 S. Ct. 1441 (1970)).

[9] Ordinarily, we will not review claims raised for the first time on appeal and not tested below. *See Romero-Vilca*, 850 F.2d at 179 (noting that, where appellant challenged certain instances of his attorney's conduct in the trial court but raised additional grounds on appeal, the appellate court could not address the merits of the ineffective assistance claim raised for the first time on appeal).

Elmour raises the issue of misinformation issue for the first time on appeal. His challenges to the guilty plea below addressed only his counsel's failure to inform him. The trial court's order accordingly reached only that issue. Moreover, although the appellant refers in his brief to an affidavit by trial counsel admitting to misinforming him, we have combed the appellate record and the trial record as submitted by that court, and find no evidence of such an affidavit.

[10] Ineffective assistance of counsel claims ordinarily are not considered on direct appeal, because the facts surrounding the representation are often not sufficiently developed to permit appellate review. *See Plaskett v. Gov't of the V.I.*, 147 F. Supp. 2d 367, 372 (D.V.I. App. Div. 2001). Such claims are reserved for a collateral proceeding "unless the appellate court can conclude that it has 'an adequate record and thus an additional evidentiary hearing need not be conducted to develop the facts.'" *Id.* (citation omitted).

those issues was raised below and, additionally, we cannot determine from the appellate record the facts surrounding defense counsel's representation to permit any meaningful review of the latter argument.