**Ronald PLASKETT, Appellant,**

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee.**

**No. CR. A. 1999/055.**

District Court, Virgin Islands, Appellate Division, D. St. Croix.

Considered: March 30, 2001.

Filed: June 4, 2001.

---

Rhonda Hospedales, Nichols Newman Logan & D'Eramo, P.C., St. Croix, VI, for Appellant.

Maureen Phelan Cormier, Assistant Attorney General, St. Thomas, VI, for Appellee.

Before RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and IVE A. SWAN, Territorial Court Judge, Division of St. Thomas and St. John, Sitting by Designation.

## OPINION OF THE COURT

PER CURIAM:

This matter is before the Court to determine whether the trial judge erred in denying Ronald Plaskett's ("Plaskett" or "appellant") Motion for New Trial. To do so, this Court must resolve the following issues: 1) whether Plaskett has proven prosecutorial misconduct and ineffective assistance of counsel; 2) whether the amendment of the complaint at the close of the government's case in chief was prejudicial; and 3) whether the trial court erred

in excluding character evidence of the victim, Lisabeth Saldana ("Saldana").

## I. FACTS

While the facts in this case are widely disputed, there is no question that Plaskett and Saldana had an intimate relationship in 1996. At the time in question, Plaskett was married to someone other than Saldana.

On October 24, 1996, Saldana went to Plaskett's residence to confront him about their affair. Also present at the residence were Plaskett's wife, daughter, mother, and brother. Saldana stood outside and challenged Plaskett (with his wife standing approximately five feet away) to reveal the truth about their relationship. Plaskett denied the relationship and the altercation instantly became physical.

Saldana testified that in response to Plaskett's denial and allegations that she was "crazy" and had "problems", she slapped him once in the face. (Supplemental Appendix ("Supp.App.") B at 58–59.) Plaskett responded by punching her once in the face. Saldana fell, but she maintains that her face did not hit the ground. While on the ground, Plaskett "jumped" on her back, twisted her neck, and punched her three more times in the face. Despite pleas from Saldana and his wife, the beating continued until Plaskett's mother came outside and demanded that he stop.

Plaskett presented another scenario. He testified that Saldana demanded a confession, and he asked her to leave the property. (Supp.App. D at 31.) She refused. He then got in his car, and Saldana started to "poke" and "dig[ ]" her hands in his face. (Id. at 32.) He responded, "Miss, stop touching me; stop touching me.... Woman, leave me alone. Leave; come out meh mother yard. Leave me alone." (Id.) Saldana kicked him repeatedly on the legs and hit him "one or

two thumps" in the chest. (Id. at 33.) He warned Saldana, "Now you are assaulting me. If you continue I am going to arrest you." (Id.) Saldana then slapped him hard in the face, and as she was about to swing again, he grabbed her arm. On direct examination, Plaskett's attorney asked:

Q Now when Lisabeth Saldana was kicking you and sticking her finger in your face why didn't you strike her at that time?

A It's not the matter of strike. You don't strike anyone. Through the academy I have been through the domestic violence class. I have had classes ... and I know the outcome if I had strike her.

(Id. at 45.) Plaskett contends that in Saldana's struggle to free her hands, she "probably lost her balance" and "fell on her face." (Id. at 38, 69–70.) Plaskett, who weighs approximately 175–190 pounds, testified that while Saldana was on the ground, he simply put his left knee on her back and kept his right leg away from her body. He then held her head and neck with his left hand, and used his right hand to hold her right hand. Plaskett testified that he never struck Saldana.

Saldana went to the emergency room and was treated by Dr. Antonio Costas–Elena ("Dr. Costas"). Testifying as an expert for the Government of the Virgin Islands ("government"), Dr. Costas stated that Saldana had received at least one "strong blow" to the face which caused swelling on the right cheek as well as bleeding from the right nostril. (Supp. App. B at 101–102.) Saldana's lips were bruised and swollen, and her right eyelid was mildly swollen and partially closed. (Id. at 101, 103–105.) Saldana later developed a "subconjunctival hemorrhage", which means that "when she got hit in the eye ... it caused blood from the blood vessels to escape." (Id. at 107, 125.)

Appellant was charged with aggravated assault and battery in violation of V.I. CODE ANN. tit. 14, § 298(5). The trial on this misdemeanor offense commenced on April 14, 1996 and lasted three days. At trial, Dr. Costas testified that Saldana's swollen lips could have been the result of the fall, (Supp.App. B at 110), but, in his opinion, the fall (in an of itself) could not have produced the injuries to Saldana's face. Dr. Wilbert Williams ("Williams") testified as an expert witness for the defense, and stated that it was "quite possible" that Saldana could have sustained her injuries from a fall, provided the fall was from a "reasonable height." (Supp.App. C at 103–104.) He conceded, however, that because he had not examined Saldana, it was "virtually impossible" for him to "look at the[ ] photographs and make a good clinical judgment of whether or not they were caused by an individual's fist, caused by a blunt instrument or caused by falling to the ground and striking the face." (*Id.* at 97.)

At the close of its case in chief, the government moved to amend the complaint to add the offense of domestic violence in violation of 16 V.I.C. § 99(d). The trial judge granted the motion to amend over defense counsel's objection. The six-member jury found Plaskett guilty of both aggravated assault and battery and domestic violence. Plaskett was sentenced to six months supervised probation, and ordered, *inter alia*, to complete all phases of rehabilitative counseling for domestic violence at the Men's Coalition. He was also ordered to pay court costs in the amount of Twenty–Five Dollars ($25.00). This timely appeal followed on June 15, 1999. Plaskett completed his six-month probation on

December 7, 1999 during the pendency of this appeal.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

This Court has appellate jurisdiction to review the judgments and orders of the territorial court "in all criminal cases in which the defendant has been convicted, other than on a plea of guilty." 4 V.I.C. § 33 (1997 & Supp.2000); Section 23A of the Revised Organic Act of 1954.[1]

 The denial of a motion for a new trial is reviewed for abuse of discretion. *Government of the Virgin Islands v. Sampson*, 42 V.I. 247, 252, 94 F.Supp.2d 639, 643 (App.Div.2000); *Colbourne v. Government of the Virgin Islands*, Crim. No. 95–214, 1995 U.S. Dist. LEXIS 21392 at n. 3 (D.V.I.App.Div. Jan. 10, 1995); *Maduro v. P. & M. Nat'l, Inc.*, 31 V.I. 121, 125, 1994 WL 594647 (D.V.I.App.Div.1994). Similarly, we review the trial judge's decision to allow an amendment to the information for abuse of discretion. *See Guardian Ins. Co. v. Joseph*, 31 V.I. 145, 152, 1994 WL 714190 (D.V.I.App.1994).

 "Findings of fact shall not be set aside unless clearly erroneous and due regard shall be given to the opportunity of the territorial court to judge the credibility of the witness." 4 V.I.C. § 33. This appellate court may not substitute its own findings, but may only assess whether enough evidence existed to support the lower court's findings. *Arroyo v. Bradshaw*, Civ.App. No. 1998/159, 2000 WL 1738388, at *1 (D.V.I.App.Div. June 1, 2000); *Francis v. Emery Constr. Mgt. Co.*, 11 V.I. 74 (D.V.I.App.1974).

---

1. The Revised Organic Act of 1954 is found at 48 U.S.C. § 1613a (1994), *reprinted in* V.I. CODE ANN., Organic Acts, 73–177 (codified as amended) (1995 & Supp.2000) (preceding V.I. CODE ANN. tit. 1) ["Revised Organic Act"].

## B. The Trial Court Did Not Err in Denying Plaskett's Motion for New Trial.

Plaskett was found guilty on April 16, 1997, and his motion for a new trial was timely filed on April 24, 1997. In support of his motion, Plaskett's trial counsel raised several arguments, namely: 1) that he was prejudiced by the amendment adding domestic violence to the complaint; 2) that Plaskett's prior acts should not have been admitted to prove his character in order to prove conformity therewith; 3) that the defense should have been allowed to question Saldana about her prior acts in order to show her motivation to lie; 4) that the government's closing arguments were improper; 5) that the trial judge displayed partiality against the defendant and his counsel; 6) that the quashing of the subpoena of Ramon Davilla was prejudicial; and 7) that the removal of juror Victoria Thompson was a denial of due process and the sixth amendment.

The Rules of the Territorial Court provide that:

> The court may grant a new trial to a defendant if required in the interest of justice. The court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before, or within two years after, final judgment. A motion for a new trial based on other grounds shall be made within 10 days after finding of guilty, or within such further time as the court may fix during the 10–day period. In no event shall this rule be construed to limit the right of a defendant to apply to the court for a new trial on the ground of fraud or lack of jurisdiction.

TERR. CT. R. 135. For the reasons stated below, this Court finds no abuse of discretion and affirms the denial of Plaskett's motion for a new trial.

## C. Ineffective Assistance of Counsel.

 Claims of ineffective assistance of counsel are ordinarily not cognizable on direct appeal, but must be raised by a collateral proceeding because the necessary facts about counsel's representation of the defendant have not been developed. *Rivera v. Government of the Virgin Islands,* Crim.App. No. 1997–100, 2000 WL 151919, at *1 (D.V.I.App.Div. Feb. 4, 2000); *Rivera v. Government of the Virgin Islands,* 37 V.I. 68, 79, 981 F.Supp. 893, 900 (App.Div.1997). "However, such a collateral review is unnecessary if the appellate court can conclude that it has 'an adequate record and thus an additional evidentiary hearing need not be conducted to develop the facts.'" *Rivera,* 37 V.I. at 79, 981 F.Supp. at 900; *Government of the Virgin Islands v. Zepp,* 748 F.2d 125, 133 (3d Cir.1984). We not only find that there is an adequate record before us to consider whether Plaskett was denied effective assistance of counsel, but also find that appellant's trial counsel was not ineffective.

 The Supreme Court has established a two-pronged test for determining when counsel was so ineffective as to violate the constitution: 1) the defendant must initially show that counsel's performance was so deficient as to undermine the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result; and 2) the deficient performance must have prejudiced the defense. *Strickland v. Washington,* 466 U.S. 668, 685, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, there must be a showing that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Rivera,* 37 V.I. at 79, 981 F.Supp. 893

(citing *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052). Effectiveness of counsel is determined by an objective standard of reasonableness, based upon the prevailing professional norms. *Rivera,* 37 V.I. at 80, 981 F.Supp. 893 (citing *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052).

■ The Supreme Court has also cautioned that review of an attorney's performance must be "highly deferential," and the presumption is in favor of competence. *Strickland,* 466 U.S. at 689–90, 104 S.Ct. 2052; *see also Sistrunk v. Vaughn,* 96 F.3d 666, 670 (3d Cir.1996). Appellant bears the burden of rebutting this presumption. *Rivera,* 37 V.I. at 79, 981 F.Supp. 893. Because counsel is afforded a wide range within which to make decisions without fear of judicial second-guessing, the Court of Appeals for the Third Circuit has cautioned that it is "only the rare claim of ineffectiveness of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." *Buehl v. Vaughn,* 166 F.3d 163, 169 (3d Cir.1999) (quoting *United States v. Gray,* 878 F.2d 702, 711 (3d Cir.1989)).

■ First, Plaskett contends that his trial counsel, Eszart Wynter ("Attorney Wynter"), "should have raised the issue of selective prosecution in a Motion to Dismiss in order to secure an evidentiary hearing on this issue" prior to trial. (Br. of Appellant at 16.) This argument does not support a finding of ineffective assistance. Attorney Wynter began his involvement in this case on February 18, 1997. On March 19, 1997, less than a month before the trial began, Attorney Wynter submitted proposed jury instructions to the court requesting the following instruction on selective prosecution:

1. The defendant has presented evidence which indicates that the prosecution utilized selective enforcement of the law against him.

2. If you find[ ] that Defendant has presented evidence that the prosecution has presented him in situations where he [sic] has not prosecuted others who have "celebrity" standing in the community, then you must find that the Defendant's due process and equal protection rights have been violated.

3. The test of whether Defendant's constitutional rights have been violated is whether Defendant has been vigorously prosecuted in circumstances where others in similar circumstances have been passively prosecuted.

4. If you find that Defendant has been prosecuted in a discriminatory manner, then you must acquit him as having had his rights violated by the prosecution in this case.

(Defendant's Proposed Jury Instructions of March 19, 1997 at 11.)

Then, during *voir dire,* the issue of selective prosecution was again raised when Attorney Wynter attempted to call convicted felon, Rolston Walters to ask him "questions related to the procedures that are followed in Public Safety." (Supp.App. A at 20.) The following discussion took place at side bar:

THE COURT: What would he— would he possibly testify to, sir?

MR. WYNTER: He had an experience with Public Safety....

THE COURT: I fail to follow your logic. If you are talking about selective prosecution I think—

MR. WYNTER: I would file—

THE COURT: Did you file a selective prosecution—

MR. WYNTER: No, I did, not.

THE COURT: The reason I am doing it at this juncture, because I am calling these witnesses and many of these wit-

ness the Court would not allow you to call if it goes to the selective prosecution issue.

MR. WYNTER: All right, Judge.

(*Id.* at 21.) It is arguable that Attorney Wynter simply changed his strategy, and decided not to pursue a pre-trial motion on the issue of selective prosecution. Attorney Wynter could arguably have concluded that he would be unable to meet the "particularly demanding" burden of proving a claim of selective prosecution which requires a defendant to introduce "clear evidence displacing the presumption that a prosecutor has acted lawfully." *See Reno v. American–Arab Anti–Discrimination Committee,* 525 U.S. 471, 489, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999).

Second, Plaskett argues that Attorney Wynter's failure to move for the removal of juror, Carmen Rios–Khan ("Ms. Khan") further supports his claim of ineffective counsel. Plaskett is incorrect in the assertion that Rios–Khan was "an employee" of the victim's father. (Br. of Appellant at 17.) Ms. Kahn worked with Saldana's father, but made it quite clear that he was not her boss. (Supp.App. A at 30.) Ms. Khan further assured the trial court that she could be fair to both parties and could judge the testimony of the victim's father as she would any other witness. (*Id.*) Another person in Attorney Wynter's position might have sought to remove Ms. Kahn through a peremptory challenge, but this exercise of judgment does not render his assistance ineffective.

With the benefit of hindsight, there were things that Attorney Wynter could have done differently, but certainly nothing that rises to the level of ineffective assistance. In another case recently before this Court, and with conduct arguably more egregious than that found in this case, the conduct of counsel was described as "unspectacular but competent". *Rivera,* 2000 WL 151919,

at *2. The same is true here. Attorney Wynter was alert throughout the trial, he made many timely objections, he was able to recall the testimony of witnesses, and he presented his defense in a generally organized and methodical manner. Additionally, Plaskett has not met his heavy burden of showing a reasonable probability that, but for Attorney Wynter's errors, the result of the proceeding would have been different.

## D. The Amendment of the Complaint at the Close of the Government's Case in Chief Was Not Prejudicial.

During the second day of trial, at the close of its case in chief, the government moved to amend the complaint to add the offense of domestic violence pursuant to 16 V.I.C. § 99(d) on grounds that

[i]t doesn't allege any different or any additional offenses. It doesn't prejudice any rights that the defendant may have. It merely seeks to comply with Title 16, Subsection 99(d), which requires that if the—if there is a criminal complaint or information that involves a domestic violence that should be made part of the count. And the amended complaint clearly reflects that.

(Supp.App. C at 47.) Defense counsel argued that the amendment would result in "substantial prejudice" to Plaskett for two reasons. First, domestic violence was a more serious offense than the aggravated assault and battery. (*Id.* at 47–48.) Second, there was no testimony that Plaskett and Saldana had a relationship. (*Id.*)

The Rules of the Territorial Court provide that:

The court may amend any process or pleading for any omission or defect therein, or for any variance between the complaint and the evidence adduced at

trial. If a party is surprised as a result of such amendment, the court shall adjourn the hearing to some future day upon such terms as it shall think proper. TERR. CT. R. 8. The Federal Rules of Criminal Procedure allow amendments to the information "at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." FED. R. CRIM. P. 7(e).

The trial judge granted the amendment, and Plaskett was convicted of both aggravated assault and battery,[2] and domestic violence pursuant to 16 V.I.C. § 99(d). Section 99(d) states that "[i]n criminal actions for domestic violence, the prosecuting attorney shall charge in the information that the alleged act is an act of domestic violence." In terms applicable to this case, domestic violence is defined as the assault or battery against a victim by a person who is, or has been, in a sexual or otherwise intimate relationship with the victim. 16 V.I.C. 91. Plaskett filed a posttrial motion to set aside the domestic violence conviction, or in the alternative for a deferred sentence pursuant to 16 V.I.C. § 99a. Section 99a generally gives a defendant who has pled guilty to a charge of domestic violence a deferred sentence during which time the defendant must successfully complete a domestic violence counseling or education program. Upon receiving notice of a defendant's successful completion of the program, the court "shall

not impose an incarcerative penalty but may impose other sentencing provisions which the [c]ourt might have otherwise imposed had the defendant opted not to proceed under this section...." 16 V.I.C. § 99a(c).

Attorney Wynter's argument that there was no testimony that the parties had an intimate relationship was totally without merit. Both Plaskett and Saldana testified that they had a sexual relationship. (Supp.App. B at 58; Supp App. D at 20.) Plaskett argues on appeal that "[i]rrespective of whether the Government had established a domestic relationship between the Appellant and the victim, Lisabeth Saldana, the trial court abused its discretion in permitting such an amendment at such a late stage during the trial." (Br. of Appellant at 17.)

An "unconstitutional amendment occurs when impermissible *additions* are made to the indictment during trial." *United States v. Zauber*, 857 F.2d 137, 151 (3d Cir.1988) (emphasis in original). The trial judge found that Plaskett had been prejudiced by the amendment, and granted his motion to set aside the domestic violence conviction. We disagree. Nonetheless, this Court will not disturb the trial judge's order setting aside the domestic violence conviction. We state for the record that the trial judge did not abuse her discretion granting the government's motion to amend the information at the close of its case in chief; the amendment was neces-

---

2. The Virgin Islands Code defines aggravated assault and battery as follows:

 Whoever commits an assault and battery—
 ....
 (5) being an adult male, upon the person of a female or child, or being an adult female, upon the person of a child;
 ....
 shall be fined not more than $500 or imprisoned not more than 1 year, or both. Provided, that whoever, whether under the laws

of the Virgin Islands, or of any other jurisdiction, or of the United States, has been once convicted of an assault and battery with deadly weapons under circumstances not amounting to an intent to kill or maim shall, upon conviction of the same offense in the Virgin Islands and upon proof of such former conviction, be imprisoned for a term of not less than 30 days.
14 V.I.C. § 298.

sary for compliance with 16 V.I.C. 99(d); there was no "addition" to the information in light of the facts presented; and the amendment did not prejudice Plaskett.

### E. There Is No Evidence Of Prosecutorial Misconduct.

▇ Appellant argues that counsel for the government, Joseph Ponteen, "engaged in prosecutorial misconduct when he argued during his closing rebuttal argument that the Appellant was in essence a 'bad cop' who had a history of complaints made against him by individual citizens, but had never been disciplined by the Police Department because of strong 'family' connections with the police department." (Br. of Appellant at 13.) At trial, Attorney Wynter objected to the prosecutor's allegedly offensive language, and, thus, preserved the issue for appellate review.

The government argues that Plaskett made his character and reputation an issue when he "offered witnesses to testify that he had an 'outstanding' record on the police force, had never been found guilty of any violation of the V.I. police department's rules and regulations, and had never been disciplined by the department." (Br. of Appellee at 14.) With that testimony before the jury, the prosecutor brought out on cross examination that there have been a number of complaints filed by citizens alleging that the defendant beat them without cause, and in one instance knocked out a person's teeth.

▇ "Given our primary concern with the fairness of the procedure, we will reverse upon demonstrations of prosecutorial misconduct only in those situations in which prejudice inures to the defendant from the challenged improprieties." *Government of the Virgin Islands v. Joseph,* 770 F.2d 343, 349 (3d Cir.1985) (quoting *United States v. Somers,* 496 F.2d 723, 737 (3d Cir.) *cert. denied,* 419 U.S. 832, 95

S.Ct. 57, 42 L.Ed.2d 58 (1974)). This Court must determine whether the prosecutor's comments constitute reversible error. *Joseph,* 770 F.2d at 349. The *Joseph* court stated:

The prejudice, which may inure to a defendant as a result of allegedly improper comments made during the government's closing argument, must be evaluated in light of that closing argument as a whole. We necessarily consider both the individual and combined effect of any challenged comments. If our review of the record convinces us that the jury would have convicted the defendant even had it not been exposed to the allegedly improper prosecutorial comments, we must conclude that no actual prejudice accrued.

*Id.* at 350 (citations omitted). This Court must vacate a defendant's conviction if "the prosecutor's remarks, taken in the context of the trial as a whole, were sufficiently prejudicial to have deprived [the defendant of his] right to a fair trial." *United States v. Retos,* 25 F.3d 1220, 1224 (3d Cir.1994) (quoting *United States v. DiPasquale,* 740 F.2d 1282, 1297 (3d Cir. 1984)).

Attorney Wynter's closing arguments were not included in the transcripts, and it is after his arguments that the prosecutor made the allegedly improper statements. Therefore, this Court is asked to decide whether there was reversible error, without having the benefit of the arguments that immediately preceded those remarks. Nonetheless, the record is clear that on direct examination defense counsel asked Plaskett:

Q Now, have you ever been investigated by the Internal Affairs Unit?

A Yes, sir.

. . . .

Q Have you ever been disciplined?

A No, sir.

. . . .

THE COURT: Was there a finding that you violated the rules?

THE WITNESS: In Internal Affairs, yes.

. . . .

Q And what happened after that?

A Well, you go to a hearing by the chief and he hears the case out and finds out if you're guilty or not guilty.

Q And what happened when you went to the hearing before the chief?

A Not guilty.

. . . .

Q To this date have there been any findings by the Virgin Islands Police Department that you have violated any of the Virgin Islands Police Manual Rules and Regulations?

A Never.

(Supp App. D at 41–44.) On cross-examination, counsel for the government asked:

Q When you go to these hearings is Deputy Chief Howard Daniel a person who sits in judgment on these hearings? Hearings that you've been to.

A One hearing.

Q And what is your relationship with Deputy Chief Howard Daniel?

A He is my uncle.

Q And what was the outcome of that hearing with the deputy chief?

A It was a [sic] informal hearing. The matter was disposed of.

Q When you say "disposed of", it was dismissed?

A Yes, dismissed. But the both parties was talked to. Me and the other guy was talked to and was told that he was to follow the law, and if he break the law I was to deal with him accordingly.

Q All right. And do you remember the name of that guy?

A Yes, sir.

Q What was his name?

A Kye Jackson.

Q Did you have a hearing with a Maxwell Perodioux?

A Yes, sir.

Q And he complained about you kicking out some teeth that he had?

A Allegedly.

Q Were his teeth knocked out?

A Up to now I don't know.

(Supp.App. at 54–55.) In light of this testimony, this Court finds that the prosecutor's remarks that Plaskett had a history of complaints and had "committed wrongs" were based on facts in the record. Furthermore, any prejudice resulting therefrom was not sufficient to have deprived Plaskett of his right to a fair trial when viewed in the context of the trial as a whole.

Plaskett also asks this Court to decide whether, during an informal conference prior to the start of trial, the prosecutor falsely and deliberately misrepresented to the judge that Plaskett had refused to enter the Pretrial Intervention Program ("PIP"). Counsel for Plaskett has put forth this bald assertion, with no transcript in support thereof. The judge was not the fact finder, and this issue had no bearing on Plaskett's conviction. More importantly, there is nothing before this Court for review.

**F. Victim's Character.**

The defendant sought to introduce past violent acts of the victim, namely an altercation with another female, and an alleged attempt to run Plaskett's wife off the road shortly before trial began. (Supp.App. C at 62, 168.) The final issue presented is whether the trial judge

abused her discretion in denying Plaskett's attempt to introduce evidence of the victim's character. The Federal Rules of Evidence provide that:

> Rule 404. Character evidence not admissible to prove conduct; exceptions; other crimes
>
> (a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> . . . .
>
> (2) Character of victim. Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor. . . .

FED. R. EVID. 404(a)(2).

Plaskett asserts that the evidence of the victim's character was for the "limited purpose of showing whether the defendant had a reasonable apprehension of danger from the victim in support of a claim of self-defense." (Br. of Appellant at 18.) The government argues that because Plaskett denied punching Saldana, he never raised the issue of self-defense. The government overlooks Plaskett's testimony that he tried to subdue Saldana by placing his knee on her back, holding her head and neck, and holding her arms. These were arguably attempts to defend himself from Saldana's alleged onslaught of blows.

The trial judge ruled that this evidence was not relevant to this case, "I am not going to let you go into collateral matters. This has nothing to do with the incident with Mr. Plaskett. It has a tendency to confuse and prejudice the jury. I will not allow it." (Supp.App. C at 62–63.) Like-

wise, the trial judge precluded the government from introducing prejudicial evidence of Plaskett's character. (Supp.App. D at 51–53.)

Admission of evidence and testimony under the federal rules is discretionary and is reviewed for abuse of discretion, but, to the extent the trial court's ruling turns on an interpretation of the Federal Rules of Evidence, the review is plenary. *Charleswell v. Gov't of the Virgin Islands,* 167 F.R.D. 674, 678 (D.V.I.App.Div.1996); *Rivera v. Govt. of Virgin Islands,* 635 F.Supp. 795, 798 (D.V.I.App.1986). Even if abuse of discretion is found, reversal is not warranted if the error was harmless. *Government of Virgin Islands v. Toto,* 529 F.2d 278, 284 (3d Cir.1976). This Court finds that there was no abuse of discretion in disallowing Plaskett's attempt to introduce prejudicial testimony about the victim's character.

### III. CONCLUSION

For the reasons stated, this Court affirms the trial judge's denial of Ronald Plaskett's motion for a new trial.