Bernard **BAPTISTE**, Appellant,

v.

**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee.**

No. 2000–227.

District Court, Virgin Islands, Appellate Division, D. St. Thomas and St. John.

Jan. 10, 2003.

Nizar Abdullah, Assistant Territorial Public Defender, St. Thomas, VI, for Appellant.

Maureen Phelan, Assistant Attorney General, U.S.V.I. Department of Justice, St. Thomas, VI, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge of the District Court of the Virgin Islands; THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and EDGAR D. ROSS, Judge of the Territorial Court of the Virgin Islands, Division of ST. CROIX, Sitting by Designation.

## MEMORANDUM OPINION

PER CURIAM.

Bernard Baptiste ["Baptiste" or "appellant"] appeals his conviction for unlawful sexual contact with a minor in violation of 14 V.I. CODE ANN. § 1708(2), arguing that (1) the trial judge abused her discretion in allowing the government's expert to testify and (2) the government's comments during closing arguments concerning Baptiste's failure to provide an expert witness of his own violated his rights under the Fifth Amendment to the United States Constitution. A review of the record indicates that the trial judge did not err in certifying the government's expert witness and the prosecutor's comments were permissible as they were in direct response to arguments made by Baptiste's attorney. Accordingly, this Court will affirm Baptiste's conviction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 13, 1998, Lee–Ann Thomas ["Lee–Ann"], then nine-years old, and her mother, Lillian Michael ["Michael" or "Lee–Ann's mother"] were watching a movie on television called "Shattering the Silence," about a man who had molested his daughter and granddaughter. Michael asked Lee–Ann whether she understood what the movie was about, and her daughter stated that she did. Michael then asked whether anyone had ever done anything like that to her, to which she eventually responded that their neighbor, Baptiste, known to the family as "Ken" or "Kenny," had touched her like that. That night, around eleven o'clock, Lee–Ann's mother took her to the police.

The Government of the Virgin Islands ["government" or "appellee"] charged Baptiste with one count of unlawful sexual contact of a minor, in violation of 14 V.I.C. § 1708(2). At Baptiste's jury trial, Lee–Ann testified that, one night in April 1998, she and Baptiste were sitting on the sofa watching television in her house. The other family members were in other rooms. Lee–Ann was wearing a large T-shirt and underwear, and Baptiste moved beside her on the couch, and told her to be quiet. He then rubbed her genital area with his hand and kissed her. Baptiste told Lee–Ann to "keep it a secret."

Dr. Arlene Smith–Lockridge ["Dr. Lockridge"], a pediatrician at Roy Lester Schneider Hospital, testified for the government. Dr. Lockridge had attended a national symposium on child sexual abuse, received a Certificate of Training in Child Abuse and Exploitation Team Investigative Process, and lectured on child abuse. She was the medical representative for the

local Multidisciplinary Team for Child Abuse and Neglect and evaluated children alleged to have been sexually or physically abused. In addition, Dr. Lockridge was authoring a professional article concerning an abused child she had treated. All told, over the course of her career, she had treated nearly one hundred abused children. (J.A. at 41–50.) Dr. Lockridge explained how, as an undergraduate, she took classes in psychology and psychiatry, and in medical school was required to do psychiatry as part of her rotation, which included child psychology. Based on this testimony, the government requested that Dr. Lockridge be admitted as "an expert in pediatrics with knowledge in the area of child sexual abuse." The trial judge, without objection from Baptiste's attorney, permitted Dr. Lockridge's testimony. (*Id.* at 51.)

Dr. Lockridge testified that she examined Lee–Ann on August 5, 1998, and that the victim told her that "Kenny," or Baptiste, had fondled her. (*Id.* at 57–58.) Dr. Lockridge explained that it was not unusual for sexually-abused children to delay reporting the abusive incidents to others because they are often afraid of incrimination, rejection, punishment, self-blame, and embarrassment. (*Id.* at 60–61.) On cross-examination, the following exchange took place:

Q. Now, you mentioned this morning that you took some training in the area of child abuse, do you consider yourself an expert in child abuse?

A: I consider myself very knowledgeable in the area of child abuse.

Q: But you are not an expert in child abuse?

A: Okay.

Q: That's correct you are not?

A: I'm not.

(*Id.* at 74.)

During the government's initial closing argument, the prosecutor argued that Lee–Ann was more credible than Baptiste, that her version of the facts were corroborated by a television guide indicating that the movie she claimed to have been watching on July 13, 1998, "Shattering the Silence," was, in fact, shown that evening, and that her mother took her to the police later that night, and to a doctor's office the next day. The prosecutor went on to say:

Now, we heard testimony from Dr. Lockridge today … Dr. Lockridge certainly has qualifications in the area of pediatrics and the area of child sexual abuse. She admitted she is not an expert on child abuse. We didn't proffer her as an expert on child abuse, we proffered her as an expert on pediatrics with some specialize [sic] knowledge in the area of child abuse and child sexual abuse which the court admitted her as a witness with those qualifications.

(*Id.* at 189–90.) During its first argument, the government did not comment on the fact that Baptiste did not offer the evidence of an expert witness.

Following the defendant's closing argument, the prosecutor stated that:

You've heard [Baptiste's attorney] quote a number of psychological things to us, filling in the gaps and a number of other suggestible behavior [sic] of children and all of that. Where was her expert to testify in this matter? She didn't have one. This is her statements [sic] to the jury, to you talking about filling in the gaps, kids being suggestible, all of this, I'm not sure what you would call it, but the fact of the matter is she hasn't presented any expert testimony here in that regard. And when she try [sic] to bring up some dubious book that was—that had never been submitted before the trial, it was ruled out and you were asked even to exclude it.

. . . . .

There's been no expert testimony from the defense in this case to a number of the things that [Baptiste's attorney], who I think maybe trying to pass herself off as [a doctor] today [has] indicated to you. The expert testimony you heard and the only expert that you heard from was [Dr. Lockridge].

(*Id.* at 197.)

After closing arguments, the defendant objected to the government's "inference that the defense has to bring in witnesses." The government contended that it was only responding to comments made by Baptiste's attorney concerning psychological truths about children, arguing that the attorney was asserting truths for which no supporting evidence had been offered. (*Id.* at 145–48.) The judge concurred with the government, finding that the prosecutor was responding to specific comments made by Baptiste's attorney concerning the susceptibility of children. Nevertheless, she gave the following curative instruction to the jury:

> [C]ertain things were said about the defendant not bringing forth certain witnesses. Please understand that a defendant like Mr. Baptiste never has to prove his innocence. The burden of proof remains always on the [government]; he's never obligated to testify, and he's never obligated to bring in any witnesses because he doesn't have to prove that he is innocent at any point in time.

(*Id.* at 156.)

The jury found Baptiste guilty, and in a judgment dated and entered on December 7, 1999, the trial judge sentenced him to ten years' imprisonment. On appeal, Baptiste argues that the trial judge erred in

allowing Dr. Lockridge to testify as an expert witness and the prosecutor's comments during closing arguments prejudiced him.

## II. DISCUSSION

### A. Jurisdiction

 This Court has jurisdiction to review final judgments and orders of the Territorial Court in criminal cases. *See* 4 V.I.C. § 33; Section 23A of the Revised Organic Act [1]. The government contends that the Appellate Division lacks jurisdiction over Baptiste's appeal because he filed his notice of appeal beyond the ten-day period mandated by Virgin Islands Rule of Appellate Procedure 5(b). The trial court's docket sheet indicates that on December 7, 1999, the trial court judge signed a judgment which was entered on the docket the same day. Computing from the next day, December 8, 1999, (*see* V.I. R. APP. P. 16(b) "the day of the act [or] event ... from which the designated period of time begins to run shall not be included") and excluding intermediate weekends (*see id.,* "[w]hen the period of time prescribed or allowed is less than eleven days, intermediate Saturdays [and] Sundays ... shall be excluded"), Baptiste would have had until December 21, 1999 to file his notice of appeal. Because Baptiste timely filed his notice of appeal on December 20, 1999, his claims are within this Court's jurisdiction.

### B. · Whether the Trial Judge Committed Plain Error in Permitting Dr. Lockridge to Testify as "an Expert in Pediatrics with Knowledge in the Area of Child Sexual Abuse"

Baptiste argues that the trial judge erred in permitting the expert testimony

---

1. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541–1645 (1995 & Supp.2001), *reprinted in* V.I. CODE ANN. 73–

177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp.2001) (preceding V.I. CODE ANN. tit. 1).

of Dr. Lockridge because she admitted that she was not an expert in the area of child abuse. He maintains that Dr. Lockridge is a pediatric specialist "who has taken a few courses in the area of child sexual abuse," and is unqualified to discuss psychiatry. In response, the government argues that Baptiste did not object to Dr. Lockridge's expert testimony at trial, and is raising this issue for the first time on appeal. Furthermore, the government asserts that Dr. Lockridge possessed the professional experience necessary to testify as an expert and that the trial judge did not err in allowing her to testify.

 Under Federal Rule of Evidence 702, a witness may offer an expert opinion if she is "qualified as an expert by knowledge, skill, experience, training, or education." FED. R. EVID. 702. Trial judges have broad discretion in deciding whether to admit expert testimony. *Government of the Virgin Islands v. Sampson,* 94 F.Supp.2d 639, 646 (D.V.I.2000). Normally, we will uphold such a decision unless it is "manifestly erroneous." *Id.* Here, however, as the government correctly points out, Baptiste's lawyer clearly stated on the record that she had no objection to Dr. Lockridge's testimony, and thus, waived his right to bring this objection. *See United States v. Watson,* 260 F.3d 301, 306 (3d Cir.2001). We therefore review the admission of Dr. Lockridge's testimony for plain error, looking for errors that are "obvious, or ... otherwise seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quoting *Government of the Virgin Islands v. Parrilla,* 7 F.3d 1097, 1100 (3d Cir.1993)). Application of the plain error doctrine "is to be used sparingly and only where the error was sure to have had an 'unfair prejudicial impact on the jury's deliberations.' " *Sanchez v. Government of the Virgin Islands,* 921 F.Supp. 297, 300 (D.V.I.1996) (quoting *United States v. Young,* 470 U.S. 1, 16 n. 14, 105 S.Ct. 1038,

84 L.Ed.2d 1 (1985)). Once a trial judge has determined that a witness is competent to testify as an expert, "challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than to its admissibility." *Sampson,* 94 F.Supp.2d at 649.

 Here, the government established that Dr. Lockridge was qualified to testify as "an expert in pediatrics with knowledge in the area of child sexual abuse." Dr. Lockridge was a pediatrician who had treated nearly one hundred children alleged to have been sexually or physically abused. She attended symposiums and seminars on child abuse, and lectured on the subject. She obtained experience in psychiatry while in medical school. The fact that Dr. Lockridge conceded that she was not an "expert in child abuse" did not require the trial judge *sua sponte* to rule her testimony inadmissible. As this Court said in *Sampson,* "[o]nce a doctor is qualified to testify as an expert medical specialist in one area, proof of [her] qualifications in another specialty is not required before [she] can testify in that other specialty." 94 F.Supp.2d at 639. The trial judge, having admitted Dr. Lockridge as an expert in pediatrics with "specialized knowledge in the area of child sexual abuse," did not err in permitting Dr. Lockridge to testify about any possible psychologically-related reasons that might have prevented Lee–Ann from reporting the incident with Baptiste earlier. Accordingly, we find Baptiste's argument on this point to be without merit.

## C. Whether the Prosecutor's Statements during Closing Argument Violated Baptiste's Fifth Amendment Rights

Baptiste avers that the prosecutor's statements during closing arguments regarding his failure to provide expert testi-

mony violated his Fifth Amendment right to be free from compulsory self-incrimination.[2] Moreover, he asserts that the trial judge's curative instruction was not sufficient to correct the "harmful and prejudicial" effect upon the jury's deliberation. The government counters that, during closing argument, Baptiste's attorney, "based much of her argument on the 'fact' that most psychologists believe that children are very prone to suggestion, quoting from psychology texts and articles that had not been admitted into evidence." The government insists that the prosecutor's comments about Baptiste's failure to provide expert testimony was "a direct response to the defendant's argument, and that he was entitled to point out to the jury that there was no evidence in the record to support the assertions made by defense counsel of psychological 'facts' during her argument."

We exercise plenary review over claims of constitutional gravity. *Maddox v. Government of the Virgin Islands,* 121 F.Supp.2d 457, 459 (D.V.I.2000) (citing *Nibbs v. Roberts,* 31 V.I. 196, 204, 1995 WL 78295 (D.V.I.1995)). The Fifth Amendment forbids comments made by a prosecutor, on his or her own initiative, concerning a defendant's unwillingness to testify. *See Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). If, however, the prosecutor makes such comments in direct response to a claim made by the defendant or defendant's counsel, there is no Fifth Amendment violation. *See United States v. Rob-*

*inson,* 485 U.S. 25, 32, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988) (affirming conviction where prosecutor commented on defendant's opportunity to testify in response to defense attorney's averment that government did not provide such an opportunity); *see also United States v. Isaac,* 134 F.3d 199, 207 (3d Cir.1998) (finding prosecutor's comments, when considered in context, "a fair response to defense counsel's closing argument"); *United States v. Gambino,* 926 F.2d 1355, 1366 (3d Cir.1991) (finding no reversible error where prosecutor's comments concerning witnesses' guilty plea was in response to argument made by the defense); *United States v. Pungitore,* 910 F.2d 1084, 1120–27 (3d Cir.1990) (holding that prosecutor's reference to his oath of office was a proper response to defense counsel's attack on the integrity of the prosecution).

Unfortunately, neither party to this appeal included Baptiste's attorney's closing argument in the Joint Appendix for this Court's review, and the prosecutor's objectionable comments followed her argument.[3] We are, therefore, asked to determine whether the prosecutor's comments render Baptiste's conviction unconstitutional without the benefit of reading his lawyer's statements. Nevertheless, a review of the record before us convinces us that Baptiste was not prejudiced by the prosecutor's comments. The trial judge specifically stated that Baptiste's attorney raised issues of child psychology for which no supporting expert evidence was presented. The prosecutor's comments, therefore,

---

**2.** The Fifth Amendment is made applicable to the Virgin Islands by § 3 of the Revised Organic Act, codified at 48 U.S.C. § 1561.

**3.** Unfortunately, the defendant's closing argument is not included in the Joint Appendix, and apparently has not been transcribed. The government states that "[t]he defendant has chosen not to include his attorney's closing argument in *his* Appendix," and that

"[t]he case file in the Territorial Court does not contain a copy of the closing arguments." (Red Brief at 12) (emphasis added.) We remind the government that this is a *Joint* Appendix, and that the *appellee* is responsible for obtaining transcripts and including in the Appendix any relevant portions of the trial proceedings that it requests the Appellate Division to review.

were a "defensive" response to these statements rather than an "offensive" attack on Baptiste's Fifth Amendment right not to present evidence. *See Pungitore,* 910 F.2d at 1126–27 (finding the "invited response" doctrine to be "limited to defensive, as opposed to offensive, conduct of the prosecutor"). Even though these comments were permissible under the Fifth Amendment, the trial judge, taking every precaution, instructed the jury that Baptiste was not required to present any evidence to establish his lack of guilt, and that the burden of proof remained with the government.

 This Court will reverse a criminal conviction upon demonstrations of prosecutorial misconduct "only in those situations in which prejudice inures to the defendant from the challenged improprieties." *Plaskett v. Government of Virgin Islands,* 147 F.Supp.2d 367, 376 (D.V.I. 2001) (quoting *Government of the Virgin Islands v. Joseph,* 770 F.2d 343, 349 (3d Cir.1985)). This Court, in *Plaskett,* applied the following standard to determine whether prejudice warranting reversal had occurred:

> The prejudice, which may inure to a defendant as a result of allegedly improper comments made during the government's closing argument, must be evaluated in light of that closing argument as a whole. We necessarily consider both the individual and combined effect of any challenged comments. If our review of the record convinces us that the jury would have convicted the defendant even had it not been exposed to the allegedly improper prosecutorial comments, we must conclude that no actual prejudice accrued.

*Id.* (quoting *Joseph,* 770 F.2d at 350). Applying the *Plaskett* standard and looking at the arguments as a whole, we find that the prosecutor's comments were permissible under the Fifth Amendment. Even if they had been improper, the trial judge's curative instruction to the jury protected Baptiste from any actual prejudice. Accordingly, we find no reversible error.

### III. CONCLUSION

We conclude that the trial judge properly certified Dr. Lockridge as "an expert in pediatrics with knowledge in the area of child sexual abuse." In addition, we find that the prosecutor's comments during closing arguments were in response to statements made by Baptiste's lawyer, and as such, were permissible under the Fifth Amendment. Accordingly, we will affirm Baptiste's conviction.

### ORDER

For the reasons given in the accompanying Memorandum Opinion of even date, it is hereby **ORDERED** that Bernard Baptiste's conviction is **AFFIRMED.**